**Signed and Filed: November 1, 2013**



_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                    ) Bankruptcy Case
                                         ) No. 13-30478DM
OTTO RAUL LEMUS,                         )
                                         )
                            Debtor.      ) Chapter 13
_____ )

MEMORANDUM DECISION ON MOTION TO VALUE LIEN

**I.  INTRODUCTION**

On October 30, 2013, the court held a trial on the motion of Debtor, Otto Raul Lemus ("Debtor"), to value the second lien of Wells Fargo Bank, N.A., s/b/m to Wachovia Mortgage, FSB a division of Wells Fargo Bank, N.A., and formerly known as Wachovia Mortgage FSB, formerly known as World Savings Bank, FSB ("Wells Fargo"). Appearances are noted in the record.

Debtor owns his real property residence on Donegal Avenue in South San Francisco, California (the "Property"). The Property is encumbered by a first lien securing an obligation owed to Wells Fargo (but unrelated to the present dispute) in the amount of $545,447.05 as of Debtor's petition date, March 1, 2013 (the "Petition Date").

Wells Fargo holds a second trust deed on the Property securing a Petition Date obligation of $54,186.88, plus arrearages

-1-

of $3,883.91.

The sole issue presented for trial is the value of the Property as of the Petition Date, a date agreed to by the parties. If it is less than $545,447.05, then the Wells Fargo second lien is subject to being stripped as a secured lien in accordance with and subject to the terms of this court's Guidelines For Valuing And Avoiding Liens In Individual Chapter 11 Cases And Chapter 13 Cases ("Guidelines").

For the reasons discussed below, the court finds as of the Petition Date the Property was worth no more than $542,000. Accordingly, Debtor's motion to value the lien of Wells Fargo at zero will be granted.

II. DISCUSSION[1]

Debtor's appraiser, Sheri Hill, appraised the Property on June 5, 2013, but retrospectively to the Petition Date, and valued it at $505,000. Wells Fargo's appraiser, Caryn Shoemaker, appraised the Property on September 3, 2013, and valued it as of the Petition Date at $645,000.

The court has some problems with both appraisals but believes it can determine the value of the Property more accurately by discounting Ms. Shoemaker's appraisal completely and adjusting Ms. Hill's appraisal. There are two significant reasons why that is so.

First, Ms. Shoemaker relied on four comparable sales, two of which were out of the neighborhood of the Property and in fact on the other side of an interstate freeway. She emphasized this

---

[1] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

-2-

anomaly based on the lack of comparable sales closer to the
Property, and attempted to justify use of those two comparables
because a more favorable high school was in their neighborhood.
Use of those comparables puts Ms. Shoemaker's valuation into doubt
because one of them is nearly one and one-half miles away. It is
hard to imagine a "comparable" on the other side of the freeway,
that far away. Further, of the two remaining comparables, one of
them was a "short-sale" for which she makes no adjustment.

Second, Ms. Shoemaker commented that she has made "the
extraordinary assumption that there is no hidden or unapparent
physical deficiencies that impact the property." This statement
is difficult to accept when on the next page of her appraisal she
concedes having observed "wood damage to floors, window sills,
leaking water heater, noisy forced air heater, water spotting in
bonus room ceiling." One of the pictures of the Bonus Room exit
door clearly shows wood damage. And a picture of the downstairs
bedroom floor notes "rot (per owner termite) damage." Because
Ms. Shoemaker made no apparent adjustment based upon these
conditions her valuation is further suspect.

Ms. Hill confined her comparables to the immediate
neighborhood and was aware of the existence of a termite report by
Premier Termite, noting dry rot and termites in the substructure
area along with standing water and a termite repair estimate of
$47,650.

Wells Fargo criticized Ms. Hill for adjusting all of her
comparables downward by $47,500. That adjustment seems completely
reasonable unless there was evidence that some of those six
comparable themselves had termite damage. While it is possible

-3-

that some did, there is no evidence of that and thus her
adjustments did not appear out of line.

Two faults with Ms. Hill's valuation require comment, and at
least one of them requires an adjustment. First, by her own
admission she was inconsistent in two different appraisals of the
Property made within a relatively short period of time, one of
which adjusted square footage at $75 per foot and the other at
$125 per foot. She conceded the error and testified that that
discrepancy would produce a $12,000 difference. For this reason
alone, the court believes that it is proper to increase Ms. Hill's
valuation to at least $517,000.

Ms. Hill also used six comparables, five of which were either
"short sales" or "REO sales," which the court understands to mean
sales by financial institutions from their "real estate owned"
portfolio. Comparables Nos. 1 and 4, were REO sales, comparables
Nos. 2 and 3 were short sales. Only comparable No. 5 was a
conventional sale; comparable No. 6 was an estate sale which
suggests that there might have been circumstances other than the
traditional "willing buyer – willing seller" to reflect a fair
market value determination.

Intuitively, the court believes that a financial institutions
liquidating their own portfolio or sellers selling their
properties as short sales, do not represent the traditional
"willing seller not under a compulsion to sell." Thus some
adjustment downward seems appropriate. But that being said, even
Ms. Shoemaker did not make an adjustment for her one short sale,
comparable No. 3, so the court will not make an adjustment
although it could easily do so. Rather than impose its own

-4-

methodology, the court will simply observe that an upward adjustment from the REO and short sales to the value of the Property of 5% of $517,000 ($28,850) would take the value only to $542,850.

Based upon the evidence presented, the value of the Property as of March 1, 2013, was no greater than $542,850. Accordingly, Debtor's Motion To Value Lien should be granted and Wells Fargo's second trust deed lien valued at zero as a secured claim in this Chapter 13 case.

Debtor's counsel should prepare, serve and upload an order to that effect, using the form order promulgated by the court in its Guidelines and specifically referencing that the order is based on the reasons stated in this Memorandum Decision.

**END OF MEMORANDUM DECISION**